Caitlin G. Coslett (Bar No. 030062009)
Eric L. Cramer
Candice J. Enders
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
215-875-3000
ccoslett@bm.net
ecramer@bm.net
cenders@bm.net

Attorneys for Plaintiff and the Proposed Class

[Additional Counsel Listed Below]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

---

| | |
|---|---|
| COSPRO DEVELOPMENT CORP., on behalf of itself and all others similarly situated, | |
| | Case No. _____ |
| *Plaintiff*, | |
| | Jury Trial Demanded |
| v. | **CLASS ACTION COMPLAINT** |
| INTERNATIONAL FLAVORS & FRAGRANCES INC., GIVAUDAN SA, GIVAUDAN FRAGRANCES CORP., DSM-FIRMENICH AG, FIRMENICH INTERNATIONAL SA, FIRMENICH INC., AGILEX FLAVORS & FRAGRANCES, INC., SYMRISE AG, and SYMRISE INC., | |
| *Defendants*. | |

---

## TABLE OF CONTENTS

NATURE OF THE ACTION ................................................................................. 1

JURISDICTION AND VENUE ............................................................................ 2

PLAINTIFF........................................................................................................... 3

DEFENDANTS .................................................................................................... 3

AGENTS AND CO-CONSPIRATORS ................................................................ 7

FACTUAL ALLEGATIONS ............................................................................... 7

      A.    Competition Authorities in the United States and Europe Are Investigating Price Fixing in the Fragrance and Fragrance Ingredient Market ........................... 7

      B.    The United States is a Substantial Market for Fragrances and Fragrance Ingredients........................................................................... 17

      C.    The Structure and Characteristics of the Fragrances and Fragrance Ingredient Market Support the Existence of a Conspiracy ................................... 18

            1.    The Market is Highly Concentrated and the Defendants Are the Dominant Firms ................................................................. 21

            2.    Barriers to Entry Are High........................................................ 24

            3.    The Buy-Side of Market Is Unconcentrated .............................. 25

            4.    Demand for Fragrances Is Inelastic ......................................... 25

            5.    Defendants Cooperated Through Industry Groups .................... 26

            6.    Fragrances and Fragrance Ingredients Are Nondurable ........... 27

      D.    Plaintiff's Claims Are Timely................................................................ 27

CLASS ACTION ALLEGATIONS ..................................................................... 29

INTERSTATE TRADE AND COMMERCE ........................................................ 31

ANTITRUST INJURY ......................................................................................... 32

COUNT I ............................................................................................................. 33

PRAYER FOR RELIEF ....................................................................................... 35

JURY DEMAND .................................................................................................. 36

i

Plaintiff Cospro Development Corp. ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class," as defined below), upon personal knowledge as to the facts pertaining to itself, and upon information and belief as to all other matters, and based on the investigation of counsel, brings this class action for damages, injunctive relief, and other relief pursuant to the federal antitrust laws and demands a trial by jury on all matters so triable.

## NATURE OF THE ACTION

1.       This lawsuit arises from an unlawful conspiracy to fix, raise, or maintain the prices for fragrances and fragrance ingredients by Defendants Symrise AG, International Flavors & Fragrances Inc., Givaudan SA, Firmenich International SA, and certain entities owned or controlled by them, as described below (collectively, "Defendants") in violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3).

2.       Defendants are the four largest producers in the global flavors and fragrances market, together comprising 64% of the market. Since at least January 1, 2018, Defendants have imposed price increases that are not adequately explained by competitive factors.

3.       On March 7, 2023, the European Commission ("EC") announced that it had carried out dawn raids at several suppliers and an industry association in the fragrances and fragrance ingredient industry in coordination with the Swiss Competition Commission ("COMCO"), the U.S. Department of Justice Antitrust Division ("DOJ"), and the U.K. Competition and Markets Authority ("CMA").[1] Although the EC's announcement did not name the companies that were under investigation, that same day, the CMA announced that it "has reason to suspect anti-competitive behaviour has taken place involving suppliers of fragrances and fragrance ingredients

---

[1] Antitrust: Commission Confirms Unannounced Inspections in the Fragrance Sector (Mar. 7, 2023), https://ec.europa.eu/commission/presscorner/detail/en/ip_23_1532.

for use in the manufacture of consumer products such as household and personal care products," and named Firmenich International SA, Givaudan SA, International Flavors & Fragrances Inc, and Symrise AG as the subjects of the investigation.[2]

4.    The next day, COMCO revealed that the dawn raids were based on "indications that several undertakings active in the production of fragrances have violated cartel law."[3] COMCO also identified the same Defendants as the subject of the investigation and disclosed that "[t]here are suspicions that these undertakings have coordinated their pricing policy, prohibited their competitors from supplying certain customers and limited the production of certain fragrances."[4]

5.    Plaintiff purchased fragrances and fragrance ingredients from one or more Defendants at artificially inflated prices and was thereby injured in its business or property. Thus, Plaintiff brings this action on behalf of itself and a Class that directly purchased fragrances or fragrance ingredients during the period from January 1, 2018 until the effects of the conspiracy ceased (the "Class Period").

## JURISDICTION AND VENUE

6.    Plaintiff brings this class action lawsuit pursuant to Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26), to recover damages suffered by the Class and the costs of suit, including reasonable attorneys' fees; to enjoin Defendants' anticompetitive conduct; and for such

---

[2] CMA Launches Investigation Into Fragrances and Fragrances Ingredients, https://www.gov.uk/government/news/cma-launches-investigation-into-fragrances-and-fragrance-ingredients (last updated Mar. 8, 2023).

[3] Frank Stüssi & Andrea Graber Cardinaux, COMCO Investigates Possible Collusions in the Fragrance Market (Mar. 3, 2023), https://www.weko.admin.ch/weko/en/home/medien/press-releases/nsb-news.msg-id-93502.html.

[4] *Id.*

other relief as is afforded under the antitrust laws of the United States for Defendants' violations of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3).

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15(a), 26).

8.      Venue is proper in this District pursuant to Sections 4, 12, and 16 of the Clayton Act (28 U.S.C. §§ 15, 22, and 26), and pursuant to 28 U.S.C. § 1391(b), (c), and (d), because, at all times relevant to the Complaint, one or more of the Defendants resided, transacted business, was found, or had agents in this District.

## PLAINTIFF

9.      Plaintiff Cospro Development Corp. is a Pennsylvania corporation that manufacturers beauty products, hair-care products, and cosmetics. Cospro Development Corp. is headquartered at 105 Washington Avenue, Reading, Pennsylvania 19601. During the Class Period, Plaintiff purchased fragrances and fragrance ingredients directly from one or more of the Defendants and has suffered monetary loss as a result of the antitrust violations alleged herein.

## DEFENDANTS

10.     Defendant International Flavors & Fragrances Inc. ("IFF") is a New York corporation that manufactures and sells flavors and fragrances. IFF maintains its principal place of business at 521 West 57th Street, New York, New York 10019. IFF is listed on the New York Stock Exchange under the ticker symbol IFF. During the Class Period, IFF manufactured and/or sold fragrances and fragrance ingredients to purchasers in the United States directly or through predecessors, affiliates, or subsidiaries.

11.     Defendant Givaudan SA is a Swiss corporation that manufactures and sells flavors and fragrances. Givaudan SA is headquartered at Chemin de la Parfumerie 5, 1214 Vernier,

Switzerland. Givaudan SA is listed on the SIX Swiss Exchange under the ticker symbol GIVN. Givaudan SA has extensive operations throughout the United States, either directly or through its wholly-owned and controlled subsidiaries and affiliates. During the Class Period, Givaudan SA manufactured and/or sold fragrances and fragrance ingredients to purchasers in the United States and elsewhere, directly or through predecessors, affiliates, or subsidiaries.

12.     Defendant Givaudan Fragrances Corp. is a U.S. subsidiary of Givaudan SA incorporated under the laws of Delaware. Givaudan Fragrances Corp. maintains its principal place of business at 717 Ridgedale Avenue, East Hanover, NJ 7936. During the Class Period, Givaudan Fragrances Corp. manufactured and/or sold fragrances and fragrance ingredients to purchasers in the United States directly or through predecessors, affiliates, or subsidiaries. Givaudan SA controls Givaudan Fragrances Corp. both generally and with respect to the conduct of Givaudan Fragrances Corp. in furtherance of the unlawful acts alleged in this Complaint. Givaudan SA and Givaudan Fragrances Corp. are collectively referred to as "Givaudan."

13.     Defendant DSM-Firmenich AG is a Swiss corporation that manufactures and sells flavors and fragrances. DSM-Firmenich AG is headquartered at Wurmisweg 576 Kaiseraugst, AG 4303 Switzerland and is listed on the Euronext Amsterdam stock exchange under the ticker symbol DSFIR. DSM-Firmenich AG was created by the merger of DSM Group and Firmenich International SA, which was completed on May 8, 2023. DSM-Firmenich AG has extensive operations throughout the United States, either directly or through its wholly-owned and controlled subsidiaries and affiliates. During the Class Period, DSM-Firmenich AG manufactured and/or sold fragrances and fragrance ingredients to purchasers in the United States and elsewhere, directly or through predecessors, affiliates, or subsidiaries.

14.     Defendant Firmenich International SA is a Swiss corporation that manufactures and

sells flavors and fragrances. Firmenich is headquartered at Rue de la Bergère 7, 1242 Satigny, Switzerland. Prior to its merger with DSM Group on May 8, 2023, Firmenich International SA had extensive operations throughout the United States, either directly or through its wholly-owned and controlled subsidiaries and affiliates. During the Class Period, Firmenich International SA manufactured and/or sold fragrances and fragrance ingredients to purchasers in the United States and elsewhere, directly or through predecessors, affiliates, or subsidiaries.

15.     Defendant Firmenich Inc. is a U.S. subsidiary of DSM-Firmenich AG incorporated under the laws of Delaware. Firmenich Inc. maintains its principal place of business at 250 Plainsboro Road, Plainsboro, New Jersey 08536. During the Class Period, Firmenich Inc. manufactured and/or sold fragrances and fragrance ingredients to purchasers in the United States, directly or through predecessors, affiliates, or subsidiaries. During the relevant period, Firmenich International SA and/or DSM-Firmenich AG have controlled Firmenich Inc. both generally and with respect to the conduct of Firmenich Inc. in furtherance of the unlawful acts alleged in this Complaint.

16.     Defendant Agilex Flavors & Fragrances, Inc. is a U.S. subsidiary of DSM-Firmenich AG incorporated under the laws of Delaware. Agilex Flavors & Fragrances, Inc. maintains its principal place of business at 140 Centennial Avenue, Piscataway, New Jersey 08854. During the Class Period, Agilex Flavors & Fragrances, Inc. manufactured and/or sold fragrances and fragrance ingredients to purchasers in the United States, directly or through predecessors, affiliates, or subsidiaries. Firmenich International SA announced that it had completed the acquisition of Agilex Flavors & Fragrances, Inc. on July 11, 2017. On May 9, 2023, Agilex Flavors & Fragrances, Inc. announced that its new parent entity would be DSM-Firmenich AG. Since the acquisition, Firmenich International SA and/or DSM-Firmenich AG have controlled Agilex

Flavors & Fragrances, Inc. both generally and with respect to the conduct of Agilex Flavors & Fragrances, Inc. in furtherance of the unlawful acts alleged in this Complaint. DSM-Firmenich AG, Firmenich International SA, Firmenich Inc., and Agilex Flavors & Fragrances, Inc. are collectively referred to as "Firmenich."

17.     Defendant Symrise AG is a German company that manufactures and sells flavors and fragrances. It was created in 2003 by the merger of Bayer subsidiary Haarman & Reimer and Dragoco, both of which were based in Holzminden, Germany. Symrise AG maintains a principal place of business at Mühlenfeldstraße 1, 37603 Holzminden, Germany. Symrise AG states that "Our Corporate Center is located in Holzminden, Germany. Key corporate functions such as governance and control, communications and administration are located here."[5] Symrise AG has extensive operations throughout the United States, either directly or through its wholly-owned and controlled subsidiaries and affiliates. During the Class Period, Symrise AG manufactured and/or sold fragrances and fragrance ingredients to purchasers in the United States and elsewhere, directly or through predecessors, affiliates, or subsidiaries.

18.     Defendant Symrise Inc. is a U.S. subsidiary of Symrise AG incorporated under the laws of New Jersey. Symrise Inc. maintains its principal place of business at 300 North Street, Teterboro, New Jersey 07608. During the Class Period, Symrise Inc. manufactured and/or sold fragrances and fragrance ingredients to purchasers in the United States, directly or through predecessors, affiliates, or subsidiaries. Symrise AG controls Symrise Inc. both generally and with respect to the conduct of Symrise Inc. in furtherance of the unlawful acts alleged in this Complaint. Symrise AG and Symrise Inc. are collectively referred to as "Symrise."

19.     Each of the entities within a corporate family carried out the business of

---

[5] Symrise, https://www.symrise.com/our-company/global-locations/.

manufacturing, distributing, marketing, and/or selling fragrances and fragrance ingredients in coordination with their parents, subsidiaries, siblings, and related entities.

## AGENTS AND CO-CONSPIRATORS

20.     The acts alleged against the Defendants in this Complaint were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of Defendants' businesses or affairs.

21.     Various persons and/or firms not named as Defendants herein may have participated as co-conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof.

22.     Each Defendant acted as the principal, agent, or joint venture of, or for, other Defendants with respect to the acts, violations, and common course of conduct alleged by Plaintiff.

## FACTUAL ALLEGATIONS

**A.      Competition Authorities in the United States and Europe Are Investigating Price Fixing in the Fragrance and Fragrance Ingredient Market**

23.     On March 7, 2023, the EC announced that it had carried out dawn raids at several suppliers and an industry association in the fragrances and fragrance ingredient industry:

> On 7 March 2023, the European Commission carried out unannounced inspections at the premises of companies and an association active in the fragrance industry in various Member States. In parallel, the Commission has sent out formal requests for information to several companies active in the same sector.
>
> The inspections and requests for information concern possible collusion in relation to the supply of fragrances and fragrance ingredients. Fragrances are used in the manufacture of consumer products such as household and personal care products.
>
> The Commission has concerns that companies and an association in the fragrance industry worldwide may have violated EU antitrust rules that prohibit cartels and restrictive business practices (Article 101 of the Treaty on the Functioning of the European Union).
>
> The Commission has been in contact with the Antitrust Division of the US Department of Justice, the UK Competition and Markets Authority and the Swiss

Competition Commission in relation to this matter and the inspections were conducted in consultation with them. The Commission officials were accompanied by their counterparts from the national competition authorities of the Member States where the inspections were carried out.[6]

24.     Inspections by the EC are not undertaken casually. Inspections are typically done by an order of the EC, and the EC must have "reasonable grounds for suspecting an infringement of the competition rules;" "[i]t must be borne in mind that the inspections carried out by the Commission are intended to enable it to gather the necessary documentary evidence to check the actual existence and scope of a given factual and legal situation concerning which it already possesses certain information."[7]

25.     That same day, the CMA confirmed its participation in the investigation and named the Defendants as the subject of that investigation:

> The Competition and Markets Authority (CMA) has reason to suspect anti-competitive behaviour has taken place involving suppliers of fragrances and fragrance ingredients for use in the manufacture of consumer products such as household and personal care products.

> The businesses under investigation by the CMA are: Firmenich International SA, Givaudan SA, International Flavours & Fragrances Inc, and Symrise AG.

> The CMA has been in contact with the Antitrust Division of the US Department of Justice, the European Commission and the Swiss Competition Commission in relation to this matter, and this investigation has been launched in consultation with them.[8]

26.     The next day, COMCO confirmed its involvement in the investigation and provided further details regarding the conduct for which the Defendants were under investigation:

---

[6] Antitrust: Commission Confirms Unannounced Inspections in the Fragrance Sector (Mar. 7, 2023), https://ec.europa.eu/commission/presscorner/detail/en/ip_23_1532.

[7]     Case No. T-135/09, *Nexans France SAS v. Comm'n*, 2012 E.C.R. 43, http://curia.europa.eu/juris/document/document_print.jsf?doclang=EN&text=&pageIndex=0&part=1&mode=lst&docid=129701&occ=first&dir=&cid=663482.

[8] CMA Launches Investigation Into Fragrances and Fragrance Ingredients, https://www.gov.uk/government/news/cma-launches-investigation-into-fragrances-and-fragrance-ingredients (last updated Mar. 8, 2023).

**The Swiss Competition Commission (COMCO) has opened an investigation in the fragrance sector. There are suspicions that producers have colluded**.

COMCO has indications that several undertakings active in the production of fragrances have violated cartel law. There are suspicions that these undertakings have coordinated their pricing policy, prohibited their competitors from supplying certain customers and limited the production of certain fragrances. Fragrances are used in the manufacture of many products, including in particular cosmetics, personal care products, detergents and cleaning products. The undertakings involved in the investigation are Firmenich International SA (Geneva), Givaudan SA (Geneva), International Flavors & Fragrances Inc. (USA) et Symrise AG (Germany).

Dawn raids were conducted at various locations. These were carried out in consultation with other competition authorities, namely the European Commission, the US Department of Justice Antitrust Division and the UK Competition and Markets Authority.[9]

27.      IFF, Symrise, Givaudan, and Firmenich have all confirmed that they are subjects of the investigation.[10]

28.      On March 7, 2023, Givaudan confirmed the investigation in a statement to Reuters:

"I can confirm that we are part of an industry-wide investigation by European and Swiss authorities. As a good corporate citizen, Givaudan is fully cooperating with the authorities," a spokesperson said.[11]

29.      On March 8, 2023, Symrise released a press release on its website confirming the investigation:

On March 7, 2023, EU cartel authorities have contacted Symrise at their headquarters in Holzminden. Together with Swiss, British and American authorities, they are investigating possible inadmissible agreements in the fragrance and fragrance ingredients sector. These investigations are taking place in parallel at all leading companies in the industry. Symrise is cooperating fully with the

---

[9] Frank Stüssi & Andrea Graber Cardinaux, COMCO Investigates Possible Collusions in the Fragrance Market (Mar. 8, 2023), https://www.weko.admin.ch/weko/en/home/medien/press-releases/nsb-news.msg-id-93502.html (emphasis original).

[10] Patricia Nilsson & Javier Espinoza, Top Four Fragrance Groups Raided in Co-Ordinated Antitrust Probe (Mar. 8, 2023), https://www.ft.com/content/ebe2087e-198d-40dd-9615-e090facfb99f.

[11] Foo Yun Chee & Oliver Hirt, EU, UK, Swiss Probe Suspected Fragrance Cartel, Givaudan Confirms Cooperation, https://www.reuters.com/world/europe/eu-antitrust-regulators-raid-companies-association-fragrance-sector-2023-03-07/ (last updated Mar. 7, 2023).

authorities. At present, precise details and concrete content on this investigation are still pending.

30.     That same day, Firmenich posted a press release to its corporate website stating:

Firmenich, the world's largest privately owned perfume and taste company confirms that on March 7th, 2023, certain competition authorities commenced an industry wide investigation into the fragrances sector. As part thereof, unannounced inspections were carried out at its offices in France, Switzerland and the UK.

Unannounced inspections are a preliminary step in anti-trust investigations into suspected infringements of competition rules. This does not mean that the company has engaged in anti-competitive behavior nor does it prejudge the outcome of the investigation itself.

Firmenich is closely monitoring the situation and is fully cooperating with the investigators. The Company is unable to comment further at this stage.

31.     In a May 10, 2023 SEC filing, IFF acknowledged the investigation and disclosed that it had received a subpoena from the U.S. Department of Justice:

On March 7, 2023, the European Commission ("EC") and the United Kingdom Competition and Markets Authority ("CMA") carried out unannounced inspections of certain of IFF's facilities. On the same day, IFF was served with a grand jury subpoena by the Antitrust Division of the U.S. Department of Justice ("DOJ"). IFF understands the EC, CMA, DOJ and the Swiss Competition Commission to be investigating potential anticompetitive conduct as it relates to IFF's fragrance businesses. [12]

32.     In an article published March 8, 2023, a spokesperson for IFF told Bloomberg that "they were working closely with the relevant authorities." [13]

33.     The subpoena in question was issued by a criminal grand jury. This indicates that the DOJ is considering a criminal prosecution against IFF and/or it co-conspirators, as reflected in Chapter 3 of the 2014 edition of the DOJ's Antitrust Division Manual. Section F.1 of that chapter

---

[12] International Flavors & Fragrances Inc., 10-Q Quarterly Report (May 10, 2023), https://fintel.io/doc/sec-international-flavors-fragrances-inc-51253-10q-2023-may-10-19487-5246.

[13] Stephanie Bodoni & Lisa Pham, Fragrance Firms Hit in Europe Suspected of Scent Supply Cartel (Mar. 8, 2023),      https://www.bloomberg.com/news/articles/2023-03-08/fragrance-firms-hit-in-europe-suspected-of-scent-supply-cartel#xj4y7vzkg.

notes that "staff should consider carefully the likelihood that, if a grand jury investigation developed evidence confirming the alleged anticompetitive conduct, the Division would proceed with a criminal prosecution." The staff request needs to be approved by the relevant field chief and is then sent to the Antitrust Criminal Enforcement Division. "The DAAG [Deputy Assistant Attorney General] for Operations, the Criminal DAAG, and the Director of Criminal Enforcement will make a recommendation to the Assistant Attorney General. If approved by the Assistant Attorney General, letters of authority are listed for all attorneys general who will participate in the grand jury investigation." Further, "The investigation should be conducted by a grand jury in a judicial district where venue lies for the offense, such as a district where the price-fixed sales were made or where conspiratorial communications occurred." Thus, the issuance of the subpoena to IFF reasonably supports an inference of collusion.

34.      These multinational investigations follow several years in which the Defendants have generally increased their profits while also imposing price increases that are not adequately explained by other competitive factors.

35.      For instance, in an April 9, 2018 report on its first-quarter sales, Givaudan reported that it "continues to implement price increases in collaboration with its customers to compensate for the increases in input costs."[14]

36.      Similarly, in an August 7, 2018 SEC report, IFF disclosed that its "[n]et sales during the second quarter of 2018 increased 9%," due in part to "price increases" during the period.[15]

37.      That same month, Symrise announced that it was "actively implement[ing] price

---

[14] Press Release, Givaudan, First Quarter Sales (Apr. 9, 2018), https://www.givaudan.com/media/media-releases/2018/2018-first-quarter-sales.

[15] International Flavors & Fragrances, Inc., Form 10-Q (Aug. 7, 2018), https://www.sec.gov/Archives/edgar/data/51253/000005125318000017/iff10-q218.htm.

increases."[16]

38.     A year later, in an August 10, 2019 earnings call, Symrise CFO Olaf Klinger responded to an analyst's question by stating that Symrise had been "successful in getting through those price increases and we should see more of this in the second half of the year."[17]

39.     At Givaudan's July 21, 2020 earnings call, Givaudan SA CEO Gilles Andrier was asked how much of the company's 1% gross profit margin improvement was due to raw material costs. Andrier responded that raw material costs "had no material effect on the gross profit margin to explain the 1% improvement."[18] Rather, the "improvement has lot to do with the price increase[s] that we have made."[19]

40.     On a November 9, 2021 earnings call, IFF CEO Andreas Fibig stated that IFF's "team ha[d] done an exceptional job increasing prices to combat inflationary pressures," helping the company achieve a 10% growth in sales.

41.     Likewise, in January 2022, Givaudan announced plans to increase prices in 2022, blaming higher input costs.[20]

42.     Less than two months later, on March 17, 2022, IFF "announced that it is

---

[16] Press Release, Symrise, Strong Organic Growth of 9.0% in the First Half of 2018 (Aug. 14, 2018), https://www.symrise.com/newsroom/article/strong-organic-growth-of-90-in-the-first-half-of-2018/.

[17] Symrise AG Q2 2019 Results: Earnings Call Transcript, Seeking Alpha (Aug. 10, 2019), https://seekingalpha.com/article/4284389-symrise-ag-syief-ceo-heinz-jurgen-bertram-on-q2-2019-results-earnings-call-transcript.

[18] Givaudan SA Q2 2020 Results: Earnings Call Transcript, Seeking Alpha (Jul. 21, 2020), https://seekingalpha.com/article/4359705-givaudan-sa-gvdbf-ceo-gilles-andrier-on-q2-2020-results-earnings-call-transcript.

[19] *Id.*

[20] Jennifer Weil, Givaudan Is Raising Prices This Year, Citing 'Higher Input Costs' (Jan. 28, 2022), https://wwd.com/beauty-industry-news/beauty-features/givaudan-implementing-price-increases-1235056842/; Silke Koltrowitz, Costs Take Bite Out of Flavour Maker Givaudan's Profit, https://www.reuters.com/business/givaudan-will-pass-higher-costs-customers-after-fy-profit-miss-2022-01-28/ (last updated Jan. 28, 2022).

implementing broad-based pricing actions" that would "vary by business and be driven by specific product cost increases. These actions will include more frequent pricing reviews – dynamic pricing – to ensure IFF product reflects current market realities."[21]

43.     In a May 10, 2022 earnings call, IFF noted that it had raised prices by approximately 8% in the preceding quarter.[22] When asked by an analyst whether the steep price increases were leading to pushback from customers, Franklin Clyburn, IFF Chief Executive Officer stated:

> There are pushbacks. I think some of the pushbacks are in some of the smaller customers, some of our emerging market customers where price is much more sensitive. We are seeing pushback there.[23]

44.     Glenn Robert Richter, Executive Vice President and Chief Financial Officer of IFF elaborated, stating that:

> I'd say, first of all, obviously, **we're not unique**. Every industry is experiencing substantial increases in inflation and **all of our competitors are out there basically taking prices up as well**.[24]

45.     Indeed, just a few weeks earlier, on April 12, 2022, co-conspirator Givaudan had confirmed publicly that "the company is continuing to implement price increases in collaboration with its customers to fully compensate for . . . increases in input costs."[25] Later that year, Givaudan

---

[21] Press Release, IFF Announces Global Price Increases Across All Divisions (Mar. 17, 2022), https://ir.iff.com/news-releases/news-release-details/iff-announces-global-price-increases-across-all-divisions.

[22] International Flavors & Fragrances Inc. (IFF) Q-1 2022 Earnings Call Transcript (May 10, 2022), https://news.alphastreet.com/international-flavors-fragrances-inc-iff-q1-2022-earnings-call-transcript/.

[23] *Id.*

[24] *Id.* (emphasis added).

[25] Givaudan to Keep Raising Prices After Q1 Sales Grew 4.6%, https://www.reuters.com/business/retail-consumer/givaudan-keep-raising-prices-after-q1-sales-grew-46-2022-04-12/ (last updated Apr. 12, 2022).

would announce plans to "accelerate price increases in the second half of the year."[26]

46.     Symrise also increased prices during the Class Period, even disclosing to Reuters on the day after the dawn raids that "[i]t plans to increase prices by a low single digit percentage this year, as it sees energy and raw material costs continuing to rise."[27]

47.     On information and belief, the justifications offered by the Defendants—that their price increases were due to increased input costs, chiefly stemming from the pandemic—were pretextual and could not fully account for the significant increases in prices over the Class Period.

48.     Far from arising during the pandemic, the statement that Givaudan "continues to implement price increases in collaboration with its customers to compensate for the increases in input costs" has appeared regularly in Givaudan's quarterly and annual reports since at least Q1 2018.[28]

49.     And despite the Defendants' claims that their price increases served only to "offset higher costs,"[29] publicly available data indicate that many of the Defendants' earnings before interest, taxes, depreciation, and amortization ("EBITDA") and gross profits increased during the Class Period, in some cases precipitously.

50.     For instance, as shown in the chart below, IFF's EBITDA surged from $160 million

---

[26] Silke Koltrowitz, Givaudan to Accelerate Price Increases as Input Costs Hit Margins, https://www.reuters.com/business/retail-consumer/givaudan-confirms-mid-term-targets-works-pass-higher-prices-2022-07-21 (last updated July 21, 2022).

[27] Jagoda Darlak & Linda Pasquini, Symrise Shares Slip on Fragrance Cartel Probe, https://www.reuters.com/markets/europe/germanys-symrise-forecasts-stable-profit-margin-2023-2023-03-08/ (last updated Mar. 8, 2023).

[28] Press Release, Givaudan, First Quarter Sales (Apr. 9, 2018), https://www.givaudan.com/media/media-releases/2018/2018-first-quarter-sales.

[29] Silke Koltrowitz, Givaudan to Accelerate Price Increases as Input Costs Hit Margins, https://www.reuters.com/business/retail-consumer/givaudan-confirms-mid-term-targets-works-pass-higher-prices-2022-07-21 (last updated July 21, 2022).

in Q4 2017 to $611 million in Q3 2022.[30] Givaudan's EBITDA, meanwhile, increased rapidly from $496 million in H2 2017 to $810 million in H1 2022.[31]



Source: tradingeconomics.com

51.     Gross profits at IFF and Givaudan also increased over the Class Period. For IFF, gross profits rose from $356 million in Q4 2017 to $1 billion in Q3 2022.[32] Givaudan's gross profits increased from $1.12 billion in H2 2017 to $1.46 billion in H1 2022.[33]

---

[30] International Flavors and Fragrances – EBITDA, Trading Economics, https://tradingeconomics.com/iff:us:ebitda.

[31] Givaudan – EBITDA, Trading Economics, https://tradingeconomics.com/givn:vx:ebitda.

[32] International Flavors and Fragrances – Gross Profit on Sales, Trading Economics, https://tradingeconomics.com/iff:us:gross-profit-on-sales.

[33] Givaudan – Gross Profit on Sales, Trading Economics, https://tradingeconomics.com/givn:vx:gross-profit-on-sales.



Source: tradingeconomics.com

52.     Symrise experienced a similar surge in earnings and profits during the Class Period despite its claims of rising costs, with EBITDA increasing nearly 50% from €631 million in FY 2018 to €922 million in FY 2022.[34]

53.     Over the same period, Firmenich's adjusted EBITDA rose from 825.5 CHF to 904.5 CHF, while its unadjusted EBITDA remained flat at around 800 CHF.[35]

54.     Notably, the sharp surge in IFF's EBITDA and gross profits coincided with a commensurate surge in the producer price index (PPI) data for flavors and fragrances reported by the Bureau of Labor Statistics:

---

[34] Financial Report 2022, Symrise (May 10, 2023), https://www.symrise.com/newsroom/downloads/.

[35]     Firmenich     Annual     Report     2022,     31,     https://img06.en25.com/Web/ FirmenichCorporateCenter1/%7B12ed0bb5-85e8-45e3-9d34-e4571c98cc26%7D_220805_FIRMENICH_AR_ FY22.pdf#page=31.



55.     These increases in EBITDA and profits during the relevant period are inconsistent with the Defendants' pretextual explanation that their price increases merely offset rising costs, and are more consistent with the existence of a conspiracy to fix prices.

**B.     The United States Is a Substantial Market for Fragrances and Fragrance Ingredients**

56.     The United States is one of the largest markets for fragrances and fragrance ingredients. For instance, in IFF's 2021 annual report, it disclosed North American sales comprising more than 30% of global sales.[36] Out of these North American sales, more than 90% were U.S. sales:

---

[36]     IFF     Annual     Report     2021,     57,     https://ir.iff.com/static-files/25f3efa3-3f10-46ba-b15a-b606e902f528#page=57.

| *(DOLLARS IN MILLIONS)* | Net Sales by Geographic Area | | |
|---|---|---|---|
| | **2021** | **2020** | **2019** |
| Europe, Africa and Middle East | $ 4,093 | $1,987 | $2,082 |
| Greater Asia | 2,728 | 1,162 | 1,163 |
| North America | 3,499 | 1,228 | 1,170 |
| Latin America | 1,336 | 707 | 725 |
| Consolidated | $11,656 | $5,084 | $5,140 |

| *(DOLLARS IN MILLIONS)* | Net Sales by Geographic Area | | |
|---|---|---|---|
| | **2021** | **2020** | **2019** |
| Net sales related to the U.S. | $3,211 | $1,093 | $1,053 |
| Net sales attributed to all foreign countries | 8,445 | 3,991 | 4,087 |

57.     One market analyst estimated the North American flavors and fragrances market to be more than $8 billion in 2021, around 25% of the global market, with projected growth to $9.6 billion by 2026:[37]

**Total Global Consumption of Flavours & Fragrances by Region, 2021-2026 (US$ Millions)**

| Region | 2021 (US$ M) | 2026 (US$ M) | 2021-2026 (% Growth p.a.) |
|---|---|---|---|
| Africa & Middle East | 2,021.9 | 2,540.8 | 4.7 |
| Asia | 13,690.5 | 18,279.1 | 6.0 |
| Central & North America | 8,181.0 | 9,608.3 | 3.3 |
| Central & Eastern Europe | 2,029.7 | 2,219.9 | 1.8 |
| South America | 2,248.2 | 2,693.2 | 3.7 |
| Western Europe | 5,655.4 | 6,585.7 | 3.1 |
| **Global Total** | **33,826.7** | **41,927.0** | **4.4** |

## C.     The Structure and Characteristics of the Fragrances and Fragrance Ingredient Market Support the Existence of a Conspiracy

58.     The structure and other characteristics of the market for fragrances and fragrance ingredients make it conducive to anticompetitive conduct among Defendants and make collusion particularly attractive.

59.     The fragrances and fragrance ingredient market is a component of the broader flavors and fragrances market in which the Defendants are the dominant global producers. Of this

---

[37] Press Release, IAL Consultants, An Overview of the Global Flavours & Fragrances Market, 13th Edition (Sept. 2022).

broader market, flavors account for approximately 57% of the market and fragrances for the remaining 43%.[38]

60.    Fragrances and fragrance ingredients produced by the Defendants are used in consumer products such as perfumes, colognes, cosmetics, personal care products, hair care products, laundry detergents, dishwashing detergents, air fresheners, and candles, with cosmetics, toiletries, soaps, and detergents accounting for the majority of sales:[39]



61.    The Defendants work with customers such as Calvin Klein, Hugo Boss, Gucci, Procter & Gamble, Colgate-Palmolive, and other customers such as Plaintiff to design and manufacture scents that customers use in their products. A report commissioned by the International Fragrance Association, an industry trade association, provides a diagram of the "value chain" of the fragrance industry:[40]

---

[38] *Id.*

[39] *Id.*

[40] The Value of Fragrance, A Socio-Economic Contribution Study for the Global Fragrance Industry, 10, (June 2019), https://ifrafragrance.org/docs/default-source/policy-documents/pwc-value-of-fragrance-report-2019.pdf?sfvrsn=b3d049c8_0#page=10.



Figure 2: Value chain of the fragrance industry

62.     As the report explains:

The fragrance industry is a central link in a fragrance value chain that runs from ingredient suppliers to consumer product manufacturers and retailers. The fragrance industry alone generates sales of €7.3bn globally, with downstream [Consumer Packaged Goods] producers generating €357bn in sales from manufacturing and retailing (23% in home care/cleaning, 68% personal care/cosmetics and 9% fine fragrance).[41]

---

[41] *Id.* at 6.

### 1.    The Market Is Highly Concentrated and the Defendants Are the Dominant Firms

63.    A highly concentrated market is more susceptible to collusion and other anticompetitive practices than less concentrated markets.

64.    The Defendants are the "four largest providers" in the market, and "together have a market share of 64%" in the global flavors and fragrances market:[42]



65.    As one industry analyst has noted, the Defendants' total share of the market:

is higher than previous years due to acquisitions and mergers. The opportunity to supply packages of products to their customers has become ever more attractive for the flavour and fragrance houses, reflected in various sideways and backwards integration moves in recent years. This is exemplified by the merger of IFF and DuPont's Nutrition & Biosciences (N&B) business and the pending merger between Firmenich and DSM.[43]

66.    Since at least 2016, Defendants have "focused on so-called bolt-on acquisitions" to

---

[42]    Symrise AG, 2022 Financial Report 12-13 (Mar. 8, 2023), https://www.symrise.com/newsroom/downloads/.

[43] Press Release, IAL Consultants, An Overview of the Global Flavours & Fragrances Market, 13th Edition (Sept. 2022).

rapidly consolidate the market,[44] leading the industry to be "dominated by just a few companies."[45]

67.    Recent examples of fragrance-industry consolidation include:

| Year | Acquisitions |
|------|-------------|
| **2014** | ▪ IFF acquired Aromor Flavors and Fragrances Ltd.[46] <br> ▪ Symrise acquired Diana Group in a transaction valued at €1.3 billion.[47] |
| **2015** | ▪ IFF acquired Ottens Flavors.[48] |
| **2016** | ▪ IFF acquired David Michael & Company, Inc.[49] |
| **2017** | ▪ Firmenich acquired Agilex Fragrances.[50] |
| **2018** | ▪ Firmenich acquired Flavourome.[51] <br> ▪ Firmenich acquired Natural Flavors.[52] |

---

[44] Gillian Tan, International Flavors & Fragrance: When Bland Is Good (May 10, 2016), https://www.bloomberg.com/opinion/articles/2016-05-10/international-flavors-fragrances-when-bland-is-good.

[45] Andy Hoffman et al., DSM Forms Flavor Giant with $21 Billion Deal for Firmenich (May 31, 2022), https://www.bloomberg.com/news/articles/2022-05-31/royal-dsm-agrees-to-merge-with-swiss-fragrance-maker-firmenich.

[46] Press Release, IFF Acquires Aromor to Strengthen Its Fragrance Ingredients and Fragrance Creation Capabilities (Jan. 16, 2014), https://ir.iff.com/news-releases/news-release-details/iff-acquires-aromor-strengthen-its-fragrance-ingredients-and.

[47] Symrise AG Successfully Closes Acquisition of Diana Group (July 29, 2014), https://www.symrise.com/newsroom/article/symrise-ag-successfully-closes-acquisition-of-diana-group/.

[48] Press Release, IFF Completes Acquisition of Ottens Flavors (May 1, 2015), https://ir.iff.com/news-releases/news-release-details/iff-completes-acquisition-ottens-flavors.

[49] Press Release, IFF Completes Acquisition of David Michael (Oct. 7, 2016), https://ir.iff.com/news-releases/news-release-details/iff-completes-acquisition-david-michael.

[50] Press Release, Firmenich Completes Acquisition of Agilex Fragrances (July 11, 2017), https://www.firmenich.com/fragrance/press-release/firmenich-completes-acquisition-agilex-fragrances.

[51] Press Release, Firmenich Completes Acquisition of "Flavourome", to Expand Presence in Africa (Feb. 5, 2018), https://www.firmenich.com/taste-and-beyond/press-release/firmenich-completes-acquisition-flavourome-expand-presence-africa.

[52] Press Release, Firmenich Completes Acquisition of "Natural Flavors", Leader in Organic-Certified Flavors (Feb. 6, 2018), https://www.firmenich.com/taste-and-beyond/press-release/firmenich-completes-acquisition-natural-flavors-leader-organic.

| | |
|---|---|
| | ▪ Givaudan[53] acquired Expressions Parfumées.[54]<br>▪ Agilex (Firmenich) acquired Fragrance West.[55]<br>▪ Givaudan acquired Naturex.[56]<br>▪ IFF acquired Frutarom.[57]<br>▪ Firmenich acquired Senomyx.[58] |
| **2019** | ▪ Givaudan acquired Golden Frog.[59]<br>▪ Givaudan announced agreement to acquire AMSilk GmbH's cosmetics unit.[60]<br>▪ Givaudan acquired Albert Vieille.[61]<br>▪ Givaudan acquired Fragrance Oils.[62]<br>▪ Givaudan acquired Drom.[63] |

[53] Givaudan, Investor Presentation (Feb. 2023), https://www.givaudan.com/files/giv-2023-investor-presentation-feb.pdf.

[54] Givaudan Completes the Acquisition of Expressions Parfumées (May 29, 2018), https://www.givaudan.com/media/media-releases/2018/givaudan-completes-acquisition-expressions-parfumees.

[55] Press Release, Agilex Fragrances Acquires Fragrance West to Expand Presence on United States West Coast (June 25, 2018), https://www.firmenich.com/fragrance/press-release/agilex-fragrances-acquires-fragrance-west-expand-presence-united-states.

[56] Givaudan Completes the Acquisition and Delisting of Naturex (Sept. 18, 2018), https://www.givaudan.com/media/media-releases/2018/givaudan-completes-acquisition-and-delisting-naturex.

[57] Press Release, IFF Completes Combination with Frutarom, Establishing a Global Leader in Taste, Scent and Nutrition (Oct. 4, 2018), https://ir.iff.com/news-releases/news-release-details/iff-completes-combination-frutarom-establishing-global-leader.

[58] Press Release, Firmenich Successfully Completes Tender Offer to Acquire Senomyx (Nov. 2, 2018), https://www.firmenich.com/taste-and-beyond/press-release/firmenich-successfully-completes-tender-offer-acquire-senomyx.

[59] Givaudan Completes Acquisition of Vietnamese Flavour Company Golden Frog (Sept. 2, 2019), https://www.givaudan.com/media/media-releases/2019/acquisition-golden-frog-completed.

[60] Givaudan to Acquire Cosmetics Business of AMSilk (Apr. 29, 2019), https://www.givaudan.com/media/media-releases/2019/givaudan-acquire-cosmetics-business-amsilk.

[61] Givaudan Completes the Acquisition of Albert Vieille (May 6, 2019), https://www.givaudan.com/media/media-releases/2019/givaudan-completes-acquisition-albert-vieille.

[62] Givaudan Acquires Fragrance Oils (Aug. 20, 2019), https://www.givaudan.com/media/media-releases/2019/givaudan-acquires-fragrance-oils.

[63] Givaudan Completes the Acquisition of Drom (Sept. 6, 2019), https://www.givaudan.com/media/media-releases/2019/givaudan-completes-acquisition-drom.

| 2020 | ▪ Symrise entered into agreement to purchase Sensient Technologies Corporations' fragrances and aroma chemicals business unit.[64] |
|------|------------------------------------------------------------------------------------------------------------------------------------|
| 2021 | ▪ IFF merged with DuPont's Nutrition & Biosciences business.[65] <br> ▪ Givaudan acquired Custom Essence.[66] |

### 2.     Barriers to Entry Are High

68.     A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supracompetitive pricing. When, however, there are significant barriers to entry, new entrants are much less likely to enter the market. The market for fragrances and fragrance ingredients has high barriers to entry.

69.     As Symrise wrote in its 2022 annual report:

The [flavors and fragrances] market is characterized worldwide by high barriers to entry. There is increasing customer demand for higher quality and more differentiated products with ever-shorter product life cycles. The majority of products and recipes are manufactured specially for individual customers. Furthermore, local taste preferences often dictate that there are many different recipes for a single end product that vary depending on the country in which it is marketed. Moreover, customer relations are often characterized by intensive cooperation in product development.[67]

70.     Likewise, Givaudan stated in a February 2023 investor presentation that the company is protected by "**High barriers to entry** and high shifting costs for customers."[68]

---

[64] Symrise to Expand Scent & Care Activities Through Acquisition of Sensient's Fragrances Business Unit (Nov. 23, 2020), https://www.symrise.com/newsroom/article/symrise-to-expand-scent-care-activities-through-acquisition-of-sensients-fragrances-business-unit/.

[65] Press Release, IFF to Complete Merger with DuPont's Nutrition & Biosciences Business (Feb. 1, 2021), https://ir.iff.com/news-releases/news-release-details/iff-complete-merger-duponts-nutrition-biosciences-business.

[66] Givaudan Completes the Acquisition of Custom Essence (Dec. 3, 2021), https://www.givaudan.com/media/media-releases/2021/givaudan-completes-acquisition-custom-essence.

[67] Symrise AG, 2022 Financial Report 12 (Mar. 8, 2023), https://www.symrise.com/newsroom/downloads/.

[68] Givaudan, Investor Presentation (Feb. 2023), https://www.givaudan.com/files/giv-2023-investor-presentation-feb.pdf (emphasis original).

### 3.    *The Buy-Side of Market Is Unconcentrated*

71.    The unconcentrated nature of the buy-side of the fragrances market is consistent with collusion. With a large number of buyers, each of whom forms a small share of the total marketplace, there is less incentive for cartel members to cheat on collusive pricing arrangements, since each potential sale is small while the risk of disrupting the collusive pricing agreement carries large penalties.

72.    While fragrance buyers consist of both larger purchasers, often of customized products, and atomistic purchasers of off-the-shelf or "back-catalog" products, given the scope of products and their applications, both types of customers are numerous such that the customer base is unconcentrated. Both large and small buyers may be purchasers of fragrances, fragrance ingredients, and raw materials.

73.    IFF, for example, "had no customers that accounted for greater than 10% of consolidated net sales in 2022, 2021 and 2020."[69] In 2021, IFF's "25 largest customers, a majority of which were multi-national consumer products companies, collectively accounted for 29% of [its] sales in the aggregate."[70]

### 4.    *Demand for Fragrances Is Inelastic*

74.    Economic theory recognizes that industries with inelastic demand are more susceptible to cartel behavior because of the potential for large increases in revenue resulting from the higher cartel prices. There are two primary characteristics that demonstrate the inelasticity of demand for the fragrances and fragrance ingredients market: a lack of substitute goods and the product being a small portion of the overall cost of the overall good.

---

[69] IFF 2021 10-K, p. 91.

[70] IFF 2021 10-K, p. 18.

75.   **Lack of Substitute Goods:** Substitute goods can serve to restrain price increases and temper the effects of a price-fixing conspiracy. There are no suitable substitute goods for fragrances or fragrance ingredients in the market that would work to restrain price increases of fragrances.

76.   **Small Share of Overall Cost**: Fragrances typically constitute only a small share of the overall cost of the end products into which they are incorporated. Within fine fragrances for example, the demand for fragrance ingredients is highly inelastic since it is a small component of the perfume manufacturer's overall cost and therefore the price would not impact how much a perfume manufacturer makes. As Givaudan stated in a recent investor presentation: "Scent and taste determine consumer purchase and repeat decisions whilst representing only a minor fraction of costs 0.5-2.0% in flavours and consumer fragrances to 4-6% in fine fragrances, i.e. a very minor portion of the end product costs."[71]

### 5.   *Defendants Cooperated Through Industry Groups*

77.   The existence of industry trade associations makes a market more susceptible to collusive behavior because they can provide a pretext under which co-conspirators can exchange sensitive information such as pricing and allocate markets.

78.   The Defendants are members of several industry associations, including the International Fragrance Association (IFRA)[72] and the Fragrance Science & Advocacy Council.[73] The Research Institute for Fragrance Materials (RIFM)[74] also includes directors from each of the

---

[71] Givaudan, Investor Presentation (Feb. 2023), https://www.givaudan.com/files/giv-2023-investor-presentation-feb.pdf.

[72] The International Fragrance Association, https://ifrafragrance.org/.

[73] Fragrance Science & Advocacy Council, https://fsac.org/.

[74] Research Institute for Fragrance Materials, https://rifm.org/.

Defendants.

79.    The European Commission announced that one of the entities that was raided on March 7, 2023, was an unnamed industry association.[75] The EC stated that it "has concerns that companies *and an association* in the fragrance industry worldwide may have violated EU antitrust rules that prohibit cartels and restrictive business practices."[76]

80.    On information and belief, this unidentified industry association assisted the Defendants in carrying out their conspiracy.

### 6.    *Fragrances and Fragrance Ingredients Are Nondurable*

81.    The market for a nondurable good is easier to cartelize than a durable good market due to lower temptation for cartel members to cheat on sales of nondurable goods and less opportunity to price discriminate based on customers' different demand elasticities.

82.    Fragrances and fragrance ingredients are nondurable products with a limited shelf life, some with "Best before" dates of only one year after manufacture.

### D.    Plaintiff's Claims Are Timely

83.    Plaintiff had no knowledge of the Defendants' anticompetitive conduct alleged herein, or of facts sufficient to place it on notice of the claims set forth herein, until, at the earliest, March 7, 2023, when the EC announced its investigation into the Defendants and that it was coordinating with the DOJ, COMCO, and CMA. It also had no awareness of the fact that the DOJ caused a grand jury to issue a criminal subpoena to IFF until that fact was announced publicly on May 10, 2023.  As a result, Plaintiff did not discover, nor could it have discovered through the

---

[75] Press Release, Antitrust: Commission Confirms Unannounced Inspections in the Fragrance Sector (Mar. 7, 2023), https://ec.europa.eu/commission/presscorner/detail/en/ip_23_1532.

[76] *Id.* (emphasis added).

exercise of reasonable diligence, the existence of the conspiracy alleged herein before these revelations. Prior to that time, there was insufficient information to suggest that the Defendants were involved in a conspiracy to fix prices, rig bids, or allocate the market for fragrances and fragrance ingredients. Because Plaintiff could not and did not discover the existence of its claims prior to March 7, 2023, Plaintiff's claims did not accrue until that date at the earliest.

84.     Moreover, the statute of limitation on the claims asserted herein was tolled by fraudulent concealment until at least March 7, 2023. Defendants affirmatively and wrongfully concealed their anticompetitive conduct since the beginning of the Class Period.

85.     Defendants' conspiracy was inherently self-concealing. The success of the conspiracy depended on the Defendants and their co-conspirators keeping the price-fixing and bid-rigging conduct alleged herein secret from customers and government authorities. Accordingly, Plaintiff reasonably believed it was making fragrance and fragrance ingredient purchases in a competitive industry.

86.     Defendants and their co-conspirators also took affirmative steps to conceal the conspiracy and carry it out in a manner that would evade detection. Additionally, the Defendants provided pretextual reasons for their price increases that Plaintiff reasonably relied upon.

87.     Because Defendants' anticompetitive conduct was both self-concealing and affirmatively concealed, Plaintiff did not learn or discover the operative facts giving rise to its claims until March 7, 2023. No information, actual or constructive, was ever made available to Plaintiff that would have led a reasonably diligent person to investigate whether a conspiracy in the market for fragrances and fragrance ingredients existed prior to March 7, 2023.

88.     Plaintiff's claims are also timely under the continuing violations doctrine. Each sale by the Defendants at prices affected by the conspiracy constituted a new overt act causing injury

to Plaintiff and members of the Class.

## CLASS ACTION ALLEGATIONS

89.     Plaintiff brings this action on behalf of itself and as a class action under Rules 23(a),

(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class (the

"Class"):

> All persons and entities in the United States and its territories who purchased
> fragrances or fragrance ingredients directly from any of the Defendants or their
> subsidiaries or affiliates during the period from January 1, 2018 until the effects of
> the conspiracy ceased. Excluded from the Class are Defendants, their parent
> companies, subsidiaries, affiliates, officers, directors, employees, assigns,
> successors, agents, or co-conspirators, and the court and its staff.

90.     While Plaintiff does not know the exact number of members of the Class, Plaintiff

believes the class size is so numerous that joinder is impracticable given Defendants' substantial

nationwide presence.

91.     Common questions of law and fact exist as to all members of the Class. This is

particularly true given the nature of Defendants' unlawful anticompetitive conduct, which was

generally applicable to all the members of the Class, thereby making relief with respect to the

Class as a whole appropriate. Such questions of law and fact common to the Class include, but are

not limited to:

(a)     Whether Defendants and their co-conspirators engaged in a combination
and conspiracy among themselves to restrict output and fix, raise, maintain
or stabilize the prices of fragrances and fragrance ingredients;

(b)     The identity of the participants of the alleged conspiracy;

(c)     The duration of the alleged conspiracy and the acts carried out by
Defendants and their co-conspirators in furtherance of the conspiracy;

(d)     Whether the alleged conspiracy violated Sections 1 and 3 of the Sherman

Act;

(e)     Whether the conduct of Defendants and their co-conspirators, as alleged in
        this Complaint, caused injury to the business or property of Plaintiff and the
        members of the Class;

(f)     The effect of the alleged conspiracy on the price of fragrances and fragrance
        ingredients during the Class Period;

(g)     Whether the Defendants and their co-conspirators fraudulently concealed
        the existence of their anticompetitive conduct from Plaintiff and the
        members of the Class;

(h)     The appropriate injunctive and related equitable relief for Plaintiff and the
        Class; and

(i)     The appropriate class-wide measure of damages.

92.     Plaintiff's claims are typical of the claims of the members of the Class, and Plaintiff
and undersigned counsel will fairly and adequately protect the interests of the Class. Plaintiff and
all members of the Class are similarly affected by Defendants' unlawful conduct in that they paid
artificially inflated prices for fragrances and fragrance ingredients from Defendants and/or their
co-conspirators.

93.     Plaintiff's claims arise out of the same common course of conduct giving rise to the
claims of the other members of the Class. Plaintiff's interests are coincident with, and not
antagonistic to, those of the other members of the Class. Plaintiff is represented by competent
counsel who are experienced in the prosecution of antitrust and class action litigation.

94.     The questions of law and fact common to the members of the Class predominate
over any questions affecting only individual members, including legal and factual issues relating

to liability and damages.

95.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

96.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## INTERSTATE TRADE AND COMMERCE

97.     Billions of dollars of transactions in fragrances and fragrance ingredients are entered into each year in interstate commerce in the United States and its territories and the payments for those transactions flowed in interstate commerce.

98.     Defendants' manipulation of the market had a direct, substantial, and foreseeable impact on interstate commerce in the United States and its territories.

99.     Defendants intentionally targeted their unlawful conduct to affect commerce, including interstate commerce within the United States and its territories, by combining, conspiring, and/or agreeing to fix, maintain, stabilize, and/or artificially inflate prices for fragrances and fragrance ingredients.

100.     Defendants' unlawful conduct has a direct and adverse impact on competition in

the United States and its territories. Absent Defendants' combination, conspiracy, and/or agreement to manipulate the market for the sale of fragrances and fragrance ingredients, the prices of fragrances and fragrance ingredients would have been determined by a competitive, efficient market.

## ANTITRUST INJURY

101.   Defendants' antitrust conspiracy had the following effects, among others:

(a)   Price competition has been restrained or eliminated with respect to the pricing of fragrances and fragrance ingredients;

(b)   The prices of fragrances and fragrance ingredients have been fixed, raised, maintained, or stabilized at artificially inflated levels;

(c)   Purchasers of fragrances and fragrance ingredients have been deprived of the benefits of free and open competition; and

(d)   Purchasers of fragrances and fragrance ingredients paid artificially inflated prices.

102.   The purpose of the conspiratorial and unlawful conduct of Defendants and their co-conspirators was to fix, raise, stabilize and/or maintain the price of fragrances and fragrance ingredients.

103.   The precise amount of the overcharge impacting the prices of fragrances and fragrance ingredients paid by Plaintiff and the Class can be measured and quantified using well-accepted models.

104.   By reason of the alleged violations of the antitrust laws, Plaintiff and the members of the Class have sustained injury to their businesses or property, having paid higher prices for fragrances and fragrance ingredients than they would have paid in the absence of Defendants'

illegal contract, combination, or conspiracy and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## COUNT I

### Violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3)
### (Conspiracy in Restraint of Trade)

105.    Plaintiff repeats the allegations set forth in paragraphs 23–104 above.

106.    From at least January 1, 2018 until the effects of their unlawful conduct cease, Defendants and their co-conspirators entered into and engaged in a contract, combination, or conspiracy with regards to fragrances and fragrance ingredients in unreasonable restraint of trade in violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3).

107.    The contract, combination or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, stabilize or maintain at artificially high levels the prices they charged for fragrances and fragrance ingredients in the United States and elsewhere.

108.    In formulating and effectuating this conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including:

(a)    exchanging competitively sensitive information among themselves, with the aim to fix, increase, maintain, or stabilize prices of fragrances and fragrance ingredients in the United States and elsewhere;

(b)    participating in meetings and conversations among themselves during which they agreed to charge prices at certain levels, and otherwise to fix, increase, maintain, or stabilize prices of fragrances and fragrance ingredients in the United States and elsewhere; and

(c)    participating in meetings and conversations among themselves to

implement, adhere, and police the agreements they reached.

109.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, raise, or stabilize prices of fragrances and fragrance ingredients.

110.    Defendants' conspiracy had the following effects, among others:

(a)    Price competition in the market for fragrances and fragrance ingredients has been restrained, suppressed, and/or eliminated;

(b)    Prices for fragrances and fragrance ingredients provided by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States and elsewhere; and

(c)    Plaintiff and members of the Class who purchased fragrances and fragrance ingredients from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

111.    Plaintiff and members of the Class have been injured and will continue to be injured in their business and property by paying more for fragrances and fragrance ingredients purchased from Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

112.    The alleged contract, combination, or conspiracy is a per se violation of the federal antitrust laws.

113.    Plaintiff and members of the Class are entitled to treble damages and an injunction against Defendants, preventing and restraining the violations alleged herein.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff and the Class respectfully request the following relief:

A.     That the Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiff as representative of the Class and the undersigned law firms as Class Counsel, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Class;

B.     The Court adjudge and decree that the acts of the Defendants are illegal and unlawful, including the agreement, contract, combination, or conspiracy, and acts done in furtherance thereof by Defendants and their co-conspirators be adjudged to have been a per se violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3);

C.     The Court permanently enjoin and restrain Defendants, their affiliates, successors, transferees, assignees, and other offices, directors, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

D.     That Judgment be entered against Defendants, jointly and severally, and in favor of Plaintiff and members of the Class for treble the amount of damages sustained by Plaintiff and the Class as allowed by law, together with costs of the action, including reasonable attorneys' fees, pre- and post-judgment interest at the highest legal rate from and after the date of service of this Complaint to the extent provided by law;

E.     That each of the Defendants, and their respective successors, assigns, parent,

subsidiaries, affiliates, and transferees, and their officers, directors, agents, and representatives, and all other persons acting or claiming to act on behalf of Defendants or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combinations, conspiracy, agreement, understanding, or concert of action as alleged herein; and

F.      That the Court award Plaintiff and members of the Class such other and further relief as the case may require and the Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

Dated: June 20, 2023                                  Respectfully submitted,

_Caitlin Coslett_

Caitlin G. Coslett (Bar No. 030062009)
Eric L. Cramer
Candice J. Enders
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
215-875-3000
ccoslett@bm.net
ecramer@bm.net
cenders@bm.net

Joshua H. Grabar
GRABAR LAW OFFICE
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

Marc H. Edelson
Edelson Lechtzin LLP
411 S. State Street
Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
Facsimile (267) 685-0676
medelson@edelson-law.com

*Counsel for Plaintiff Cospro Development
Corp. and the Proposed Class*